IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXTRAQ, LLC, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 22 C 6720 |
| OMNITRACS, LLC, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

NexTraq LLC, a reseller of vehicle tracking solutions, has moved for entry of a preliminary injunction against Omnitracs LLC, a software and fleet management solutions company. NexTraq contends that Omnitracs agreed to provide NexTraq and its customers with VisTracks electronic logging device (ELD) services through April 7, 2023 but breached the agreement by notifying NexTraq that it would only provide those services through December 31, 2022. For the reasons below, the Court grants NexTraq's motion for a preliminary injunction, but only through February 15, 2023.

### Background

A.     NexTraq and Omnitracs' contract

NexTraq is a reseller of ELD devices and services to end-user trucking customers. An ELD is a device installed in truck's cab, or on a smart phone or tablet, that monitors the truck's activity. In order to reduce the number of accidents caused by truckers driving too long without rest, truckers are required by federal law to use an ELD. The Federal Motor Carrier Safety Administration therefore provides a list of over

850 registered ELD providers.

On April 8, 2019, NexTraq and Omnitracs' predecessor company, VisTracks Inc., entered into a contract under which VisTracks agreed to provide ELD services to NexTraq. When Omnitracs acquired VisTracks in May 2020, it assumed and continued to perform the agreement. The contract was automatically renewed for subsequent one-year periods on April 8, 2021 and April 8, 2022 under the following contractual provision:

> a. **Term.** The term of this agreement will commence on the Effective Date and will terminate on a date occurring one (1) calendar year after the Effective Date ("Initial Term") unless earlier terminated as set forth herein. After the Initial Term, this Agreement shall automatically be renewed for successive one (1) year terms (each a "Renewal Term") unless otherwise terminated as set forth herein.
>
> b. **Termination.** Either Party may terminate this Agreement Order at the end of the Initial Term, or at the end of any Renewal Term, by delivering written notice to the other Party of its intent to terminate no fewer than ninety (90) days prior to the end of the Initial Term or the applicable Renewal Term.

Dkt. 6-4 at 4-5. In view of the April 8, 2022 renewal, the agreement was intended to run through April 7, 2023.

**B. Anticipatory breach**

On June 28, 2022, Omnitracs informed NexTraq of the intention of its parent company, Solera, to discontinue—or "end of life (EOL)"—the VisTracks ELD product. This notice stated that the product would be EOL effective September 28, 2022 but that Omnitracs may be willing to extend the EOL date upon written request. On July 8, 2022, NexTraq objected to this notice of termination and demanded that Omnitracs honor the contract through the end of its term ending April 7, 2023. NexTraq sent an additional demand on November 14, 2022, stating that it would be prepared to seek

injunctive relief if Omnitracs did not honor its obligations.

On November 18, 2022, counsel for Omnitracs stated to NexTraq that it would provide ELD services through December 31, 2022, but no further.[1]  Omnitracs' decision was based in part on the fact that its VisTracks ELD product was sold to a third-party buyer as part of a confidential asset sale on October 7, 2022.  Omnitracs contends that the VisTracks agreement was not assumed by or assigned to the buyer because the sale was an assets-only deal.  In order to perform the contract through the end of December, Omnitracs obtained a temporary license from the third-party buyer to continue providing ELD services to NexTraq.  Omnitracs submits that it will lose access to the purchaser's systems after December 31, 2022 and that the buyer is uninterested in extending the current license any further.

**C.     Litigation**

On November 30, 2022, NexTraq filed suit in state court seeking injunctive relief requiring Omnitracs to provide ELD services through April 7, 2023.  Omnitracs immediately removed the case to this Court under the Class Action Fairness Act.  On December 1, 2022, NexTraq filed a motion for an emergency hearing, which Judge Rowland (acting as emergency judge in the undersigned judge's absence) denied, instead ordering expedited briefing on NexTraq's motion for a temporary restraining order or preliminary injunction.  NexTraq next filed a motion for expedited discovery on December 5, 2022, which the Court denied after hearing argument.  The Court held a hearing on NexTraq's motion for a preliminary injunction on December 15, 2022.  And to

---

[1] Omnitracs contends that it agreed to provide ELD services through December 31, 2022 on August 3, 2022, not in November.

be clear, given the state of briefing and argument at this point, the Court is treating the motion as seeking a preliminary injunction; the case is well past the temporary restraining order stage.

## Discussion

NexTraq has moved for a preliminary injunction directing Omnitracs to specifically perform the contract by providing ELD services to NexTraq through April 7, 2023 when the agreement's term ends, and to class members through the end of the terms of their agreements. "To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* Omnitracs opposes the motion, contending that NexTraq has not met the threshold requirements for a preliminary injunction, and that even if it has, the balance of hardships and the public interest weigh against the Court issuing one.

**A.     Likelihood of success**

NexTraq must show that "its claim has some likelihood of success on the merits," *Mays*, 974 F.3d at 822 (citation omitted). "[A] mere possibility of success [on the merits] is not enough" for NexTraq to establish this. *See Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Nevertheless, the "likelihood of success" threshold is

a "low" one. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). NexTraq must show that it has a "better than negligible chance" or "some likelihood" of success on the merits of its breach of contract claim. *Id.* at 1096, 1100.

NexTraq has established a reasonable likelihood of success on its breach of contract claim against Omnitracs. Specifically, the evidence supports NexTraq's contention that Omnitracs was bound under the parties' contract to provide ELD services through April 7, 2023 and has anticipatorily breached the agreement by announcing that it will cease doing so after December 31, 2022. In fact, Omnitracs does not appear to contest, at least for present purposes, that it has committed an anticipatory breach. Instead, it argues that NexTraq is unlikely to succeed on the merits, not because there was no breach, but because Omnitracs has no power to perform its obligations under the agreement past December 31, 2022, as it will no longer have access to the VisTracks ELD technology by virtue of its asset sale and the expiration of its temporary license. The Court is not persuaded by this argument.

Omnitracs has not shown that it would be impossible or even unduly burdensome to obtain a further extension on the license it currently holds. Moreover, it cannot be the case that by voluntarily disposing of this aspect of its business, Omnitracs can relieve itself of its contractual obligations.[2] The agreement is still in effect, and Omnitracs remains obligated to perform. *Am. Hosp. Supply Corp. v. Hosp. Prod. Ltd.*, 780 F.2d

---

[2] This may be a legitimate consideration when balancing the harms, but it is not a legitimate consideration on the question of likelihood of success.

5

589, 594 (7th Cir. 1986) ("the fact that a plaintiff might have no hope of getting specific performance ordered at the conclusion of the trial need not prevent him from obtaining a preliminary injunction."). In sum, NexTraq has shown that it has a reasonable likelihood of success on its breach of contract claim against Omnitracs.

**B.**     **Irreparable harm and the inadequacy of legal remedies**

NexTraq must next demonstrate that "it will suffer irreparable harm in the interim period prior to final resolution of its claim[]" and that "traditional legal remedies would be inadequate" without an injunction requiring Omnitracs to continue providing ELD services. *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086. Once a protectable interest is established, irreparable injury is presumed if the interest were to remain unprotected. *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 627 N.E.2d 21, 27 (1st Dist. 1993); *McRand, Inc. v. van Beelen*, 138 Ill. App. 3d 1045, 1054, 486 N.E.2d 1306, 1313 (1985).

Omnitracs contends that NexTraq does not face irreparable harm because: (1) ELD services are neither complicated nor difficult to procure; (2) this is underscored by the fact that NexTraq has already begun migrating its customer base to another provider; and (3) damages are an adequate remedy for Omnitracs' breach.

The parties disagree sharply regarding the difficulty, or as NexTraq contends, the impossibility, of obtaining a suitable substitute for all its customers before December 31, 2022. Omnitracs contends that NexTraq is creating a fictitious "doomsday scenario in which its customers will lose access to VisTracks, face government fines and suspension of their driving operations, and even negatively impact highway safety," when in reality, it could "easily obtain substitute ELD services for its customers within

days." Dkt. 18 at 1, 6 (internal quotation marks omitted). Omnitracs argues that this point is underscored by the fact that NexTraq has already secured an alternate ELD vendor and has begun migrating its customer base to that vendor. NexTraq, however, has submitted an affidavit from its marketing director, Anderson Abernathy, that tells a different story:

> [O]nce the Reseller Agreement was executed with our new ELD supplier, NexTraq immediately began working to integrate the new ELDs into its platform. Because the formatting and ingesting of data differs from one ELD provider to the next, NexTraq could not simply repurpose its existing Omnitracs assets . . . . Rather, NexTraq has had to create a new interface between the ELD driver devices and the vehicle tracking devices, which has required significant coding and development work that remains ongoing to ensure that the devices can '"talk" with each other and upload the requisite data to NexTraq's platform. . . . Most importantly, new ELDs need to be installed in certain of our customers' fleets . . . thousands of vehicles need to be taken out of service for the ELD transition to occur. In addition, because the new ELDs are different than those provided by Omnitracs, our customers' drivers need to be trained to utilize the new devices . . . [because] transitioning to a new ELD is a logistically demanding and resource-intensive process, []NexTraq has only successfully transitioned approximately 10% of its customers . . . [and] expects that a significant portion will not have been transitioned by December 31, 2022…In addition, approximately 20% of NexTraq's customers are facing an even more difficult transition to the new ELD provider, given their current hardware setup . . . [and the fact that] the replacement service NexTraq has contracted for is compatible only with Android devices.

Dkt. 19-1 at 3-4. Abernathy's statement is uncontradicted and plausible, and it is sufficient to establish that the transition process is not as fast or straightforward—and new ELD devices are not as fungible—as Omnitracs suggests.

At the preliminary injunction hearing on December 15, Omnitracs contended that any complexity in the transition process that prevents NexTraq from being able to migrate all of its customers to a new ELD vendor before December 31, 2022 is unrelated to anything Omnitracs controls as part of the parties' contract. More

7

specifically, it contends that what has slowed down the transition process is NexTraq's desire to have an integrated platform with other services it offers and that these "bells and whistles" are not attributable to Omnitracs' service and have nothing to do with its obligations. This argument lacks merit. Omnitracs' services were integrated into an existing platform; there's nothing to indicate that this is unusual or in the least bit surprising; and thus Omnitracs cannot lay the disruptive effect of its breach at NexTraq's feet—at least not for purposes of the preliminary injunction analysis.

NexTraq also contends that damages are an inadequate remedy for Omnitracs' breach because NexTraq's brand, business reputation, competitive position, goodwill, and future customer sales will all be harmed in ways that cannot be calculated and thus are not compensable with money damages. Omnitracs responds that NexTraq has failed to present evidence that Omnitracs' breach has harmed or will harm NexTraq in the ways it alleges. But "a legal rule that irreparable injury can be established *only* by a concrete demonstration would make injunctions useless as a practical matter . . . . it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 272, 880 N.E.2d 188, 198 (2007) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). With this in mind, NexTraq has made a sufficient showing of irreparable harm. It need not establish present harm; future harm suffices. That aside, Abernathy's testimony does indicate that complaints have already been made by customers regarding the burden of transitioning to a new system. It's likely, as counsel for Omnitracs argued at the hearing, that these complaints would have been the same whether the transition took place now or around April, but that argument ignores that the important distinction

between a rushed transition process during the holidays—which is more likely to impair goodwill—and a more gradual, thorough one during the winter and early spring.

Omnitracs also contends that there is no reason to believe NexTraq will lose customers or suffer reputational injury because it can easily obtain a substitute ELD provider before December 31, 2022. Any additional, unforeseen costs incurred by NexTraq to facilitate the transition, Omnitracs says, would be compensable with damages. But, again, NexTraq has sufficiently shown that it has been able to obtain an alternate provider only for a portion of its customer base at this point, and this progress does not prevent harm to its goodwill and competitive position that has already occurred or will occur in the absence of an injunction. *See Menominee Rubber Co. v. Gould, Inc.*, 657 F.2d 164, 167 (7th Cir. 1981) (loss of goodwill and the disruption of a distributor's business resulting from the termination of an agreement was substantial and sufficient to constitute irreparable harm.) The Court is persuaded, for purposes of the present motion, that damages cannot adequately compensate NexTraq for the goodwill impairment it faces, including the loss of existing customers, a diminished reputation in the industry, and the consequent loss of potential new customers.

Finally, Omnitracs contends that any harm NexTraq faces—monetary or reputational—is attributable to its own delay in pursuing an alternate ELD provider after receiving Omnitracs' EOL notice in June 2022. At the hearing, Omnitracs also pointed out that Abernathy stated in his affidavit that NexTraq has been in the process of securing an alternate vendor since before Omnitracs' June 2022 notice. This, Omnitracs says, is inconsistent with NexTraq's contention that it has been caught flat-footed and cannot achieve a complete transition before the end of December.

"Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). A delay in moving for a preliminary injunction is less likely to be acceptable if the defendant was "lulled into a false sense of security" or "acted in reliance on the plaintiff's delay." *Id*. There is no evidence of that here; NexTraq has made it clear that it opposes Omnitrac's anticipatory breach since the moment it learned of it and has repeatedly demanded that Omnitracs continue performance through April 2023.

Moreover, Omnitracs' contentions regarding NexTraq's early pursuit of an alternate vendor actually cut in the other direction. As NexTraq argued at the hearing and as Abernathy's indicated in his affidavit, NexTraq began looking for an alternate vendor early this year to have a backup, precisely because it knew that any transition process would be lengthy and cumbersome. But it did not anticipate having to conduct a transition until April 2023 or in the months just before that. Now it has been forced by Omnitracs' actions to move up the timetable significantly. This cannot be construed as a willful delay. In sum, Omnitracs cannot argue that NexTraq brought this harm on itself and is now running to the Court for relief at the eleventh hour.

For these reasons, the Court finds that NexTraq has established that it will suffer irreparable harm and that damages would be inadequate to remedy the injuries it faces.

**C.   Balance of hardships**

Because the Court finds that NexTraq has met the threshold requirements for a preliminary injunction, it next balances the harm NexTraq would suffer if the injunction is denied against the harm Omnitracs would suffer if the injunction is granted.

Omnitracs will not suffer significant if it is required to effectively maintaining the status quo. Omnitracs contracted to provide ELD services through April 7, 2023, and its claim that it cannot do so is completely and entirely attributable to its own actions. A preliminary injunction would require Omnitracs to do only what it has already agreed to do. NexTraq communicated more than once that Omnitracs' EOL notice constituted a breach of the parties' contract and that NexTraq would pursue litigation if Omnitracs did not agree to perform the agreement through the end of its contractual term. Omnitracs nonetheless chose to seek a license for the technology needed to perform only through December 31, 2022, rather than through April 7, 2023. *See Ty, Inc.*, 237 F.3d at 903 (noting that a court should "exclude[]" the burden a defendant "voluntarily assume[s] by proceeding in the face of a known risk").

As explained above, NexTraq and its 232 customers face irreparable harm if Omnitracs is not required to continue providing ELD services until NexTraq can successfully migrate the remainder of its customers to a suitable ELD provider. Omnitracs is in a better position to continue providing the very same services it has been providing for years than NexTraq is to hurriedly migrate its remaining customer base to a new ELD vendor—one that does not have a device compatible with iOS systems, which many of NexTraq's remaining customers have—in a matter of ten days, some of which are major holidays.

The Court therefore finds that the balance of hardships favors entry of an injunction. At the December 15 hearing, however, counsel for NexTraq implied that something like 80-90% of its customers should be transitioned before December 31, 2022. For this reason, the Court does not see a need to issue an injunction requiring

11

performance by Omnitracs through April 7, 2023; an extra month and a half should be sufficient, and limiting an injunction in that way is an appropriate exercise of the Court's equitable authority to balance the harms.

## Conclusion

For the foregoing reasons, the Court grants in part NexTraq's motion for a preliminary injunction against Omnitracs. The Court enjoins Omnitracs LLC, and anyone affiliated or acting in concert with it, through February 15, 2023, from ceasing to perform its contract with NexTraq LLC. The case is set for a telephonic status hearing on January 3, 2023 at 8:40 a.m., using call-in number 888-684-8852, conference code 746-1053. A joint status report is to be filed on December 30, 2022.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 21, 2022